**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATE OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>LUIS ENRIQUE GARCIA-LIZARRAGA,<br><br>                                    Defendant. | CASE NO.: 20-cr-2053-LAB-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C § 3582(c)(1)(A) [Dkt. 396]** |

  In June 2021, Luis Enrique Garcia-Lizarraga ("Lizarraga") pled guilty to conspiracy to distribute methamphetamine and attempted export of defense articles without a license, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 22 U.S.C. §§ 2778(b)(2), (c). The Court sentenced him to 120 months imprisonment, followed by 5 years of supervised release. (Dkt. 304). The Government subsequently filed a motion for reduction of sentence, which the Court granted and amended the sentence to 96 months imprisonment, followed by 5 years of supervised release. (Dkt. 376). He has served 29 months. Lizarraga moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which permits a court to modify a defendant's term of imprisonment if it concludes that "extraordinary and compelling reasons" warrant a reduction after considering the factors set forth in 18 U.S.C. § 3553(a).

Lizarraga urges the Court to release him from custody. (Dkt. 396 at 1). His partner, Ashley Contreras, was in a car accident that left her paralyzed from the chest down and unable to care for herself, her two older children, and their three-year-old son. (*Id.*). The Government opposes, contending that Lizarraga failed to show he's the only available caregiver, and even then, the § 3553(a) sentencing factors weigh against a sentence reduction. (Dkt. 411 at 1, 8). The Court agrees.

## I.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

Under § 3582(c), a defendant may bring a motion only after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring the motion on his behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Lizarraga contends that he has exhausted his administrative remedies by submitting two requests for compassionate release, one on March 29, 2023, and another on September 7, 2023. (Dkt. 396 at 2). The warden denied both. (*Id.*). Although he failed to provide evidence that he appealed either decision through the Bureau of Prisons's Administrative Remedy Process within the 20 days, the Court will still consider the merits of Lizarraga's motion. *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).

### B.   "Extraordinary and Compelling" Reasons Under § 3582

Under 18 U.S.C. § 3582(c)(1)(A), a court may modify a defendant's term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), it concludes that "extraordinary and compelling reasons" warrant a reduction. "Extraordinary and compelling" reasons may include the "incapacitation of the caregiver of the defendant's minor child" or "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S. Sent'g Guidelines Manual

§§ 1B1.13(b)(3)(A)–(B) (U.S. Sent'g Comm'n 2023). It's sufficient that the incapacitation involves "an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual." *Id.* Here, the Government concedes that Ms. Contreras satisfies the "similar in kind" definition. (Dkt. 411 at 5).

Lizarraga "bears the burden of establishing that he is eligible for a sentence reduction." *United States v. Grummer*, 519 F. Supp. 3d 760, 762 (S.D. Cal. 2021). Lizarraga argues that there only needs to be a lack of an "adequate" caregiver. (Dkt. 422 at 3). He cites cases in which the court determined incapacitation of the minor child's caregiver meant the ability to provide adequate care. *See United States v. Carlos Resendiz*, No. 21-cr-143-BAS-1, 2023 WL 7309439, at *2 (S.D. Cal. Nov. 6, 2023) (concluding that defendant's wife was unable to take care of their children while she commutes back and forth for their sick child with cancer); *United States v. Potenciano*, No. 16-cr-1285-BEN, 2022 WL 3364684, at *2 (S.D. Cal. Aug. 12, 2022) (warranting compassionate release for defendant to care for her three school-age children who all have special needs despite her aging mother currently caring for them); *United States v. Rojas*, No. 17-cr-337-LAB-4, 2021 WL 4690509, at *2 (S.D. Cal. Oct. 7, 2021) (deciding that defendant's 78-year-old mother was an inadequate caregiver for defendant's child who suffered serious medical conditions and required a great deal of assistance).

Yet, other courts have decided that the defendant must still show that the current caregiver is "incapacitated," and the defendant is the "only caregiver" to care for his or her child. *See United States v. Morfin-Rios*, No. 18-cr-4997-JAH, 2023 WL 4355341, at *5 (S.D. Cal. July 5, 2023) (failing to show incapacitation as the current caregiver continues to maintain employment); *United States v. Plaketta*, No. 19-cr-1097-JM, 2022 WL 17363886, at *3 (S.D. Cal. Dec. 1, 2022) (deciding that although it may be difficult for the current caregiver, the record failed

to indicate the she is so "incapacitated that she has been rendered incapable of caring" for her minor children because incapacitated means "completely disabled"); *United States v. Tamariz*, No. 17-cr-3551-BTM-1, 2020 WL 7770914, at *1–2 (S.D. Cal. Dec. 30, 2020) (stating that after being diagnosed with leukemia and having gone through chemotherapy, "Defendant's evidence indicates that his wife is struggling, [but] it does not establish that his wife is incapacitated by her medical conditions, such that she is completely unable to care" for the children, "or that no one else is available to assist her").

Lizarraga and Ms. Contreras have one child together, a three-year-old son who currently resides in Mexico with Lizarraga's mother. Dating back to 2021, Lizarraga's mother has been treated multiple times for back pain. (Dkt. 422-2 at 1–2). Doctors stated she's "delicate for function, good for life," but informed her not to carry anything over 10 kilograms. (*Id.* at 2). However, Lizarraga's son needs a "patient caregiver that spends time with him (playing, going to a park, etc.)" because "running and playing can serve as therapy." (*Id.* at 5).

Lizarraga fails to show that his mother is incapacitated. Although tasks may be difficult for her, the record doesn't establish she's been rendered incapable of caring for his child. Additionally, Lizarraga didn't provide evidence indicating that no one else is available to assist his mother in taking care of his son. Even if the Court decided to take a more lenient stance, Lizarraga's cases demonstrate that he has failed to prove his care would be more adequate than the current situation. In *Rojas*, this Court granted compassionate release, but the child and mother suffered much more serious medical conditions than Lizarraga's son and mother.[1] Due to Ms. Contreras's health situation, Lizarraga will have to work and provide for his family, and his alleged job at Olive Garden may require him to work outside

---

[1] Furthermore, the § 3553(a) factors weighed in favor of granting Rojas's release. Rojas only had 7 months left on her sentence, she was currently residing in a halfway house, and she was released to home confinement.

the hours of 8:00 AM through 4:00 PM. If that's the case, no one will be available to adequately care for their child, as Ms. Contreras is incapacitated. As a result, there's no "extraordinary and compelling reason" sufficient to establish Lizarraga's need to provide care for his child.

When situations are similar in kind, the defendant must be the "only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3)(D). Lizarraga admits that he and Ms. Contreras "are not formally married or registered partners," (Dkt. 396 at 2), so § 1B1.13(b)(3)(D) applies. Lizarraga has failed to establish he's the "only available" caregiver to Ms. Contreras and her children. U.S.S.G. § 1B1.13(b)(3)(D). In December 2023, the state of California authorized 252.19 hours per month of paid care by a provider (caregiver) for Ms. Contreras through In-Home Supportive Services ("IHSS"). (Dkt. 396 at 5; 396-8). Lizarraga concedes Ms. Contreras's sister, Ashmitt Contreras, is "available to avail [herself] of these funds." (Dkt. 396 at 5). In other words, Lizarraga admits he isn't the "only available" caregiver, and Ashmitt Contreras is currently her sister's caregiver. (Dkt. 422-3). Even if Ms. Contreras's sister is unavailable at times because of her own disabled child, Ms. Contreras can seek help elsewhere because San Diego County offers independent IHSS providers that assist eligible individuals with homemaking and personal care. *See* IHSS Providers, https://www.sandiegocounty.gov/content/sdc/hhsa/programs/ais/Services/In-Home-Supportive-Services/IHSS-Providers.html (last visited Apr. 10, 2024).

While the Court is sympathetic to Lizarraga's family circumstances, the Court finds that he failed to establish the requisite eligibility to qualify for extraordinary and compelling reasons to warrant compassionate release.

C.   **18 U.S.C. § 3553(a) Factors**

Even if Lizarraga established an extraordinary and compelling reason to warrant compassionate release, the Court must also consider the factors listed in

1  18 U.S.C. § 3553(a), which don't weigh in favor of release.

2  Although Lizarraga is a Category I offender, he deserves the punishment the Court imposed. He played a significant role in a drug trafficking conspiracy that smuggled in over 100 kilograms of methamphetamine and 17 kilograms of fentanyl in just over a year.

Lizarraga knowingly and intentionally agreed to help distribute methamphetamine in or before March 2018 until at least June 10, 2019. (Plea Agreement, Dkt. 207 at 4). He admitted his role included: (a) "working to facilitate the retrieval of methamphetamine and other drugs, including fentanyl, that were smuggled into the United States by an Ultra-Light aircraft (ULA);" (b) "arranging for methamphetamine sales in the United States"; (c) "transporting couriers, including, but not limited to, juvenile couriers"; and (d) "coordinating the retrieval of and retrieving drug proceeds" and "coordinating the delivery and delivering those proceeds in Mexico to Mexico-based drug trafficker." (*Id.*).

On two separate occasions, Lizarraga facilitated the pickup of methamphetamine. (*Id.*). On December 16, 2018, law enforcement seized 57.1 kilograms of methamphetamine from a courier. (*Id.*). To evade another seizure, Lizarraga conversed with a "heavy hitter" Mexico-based drug trafficker to locate a new drop zone. (*Id.*). However, on August 4, 2019, law enforcement seized another 34.5 kilograms of methamphetamine along with 17.5 kilograms of fentanyl. (*Id.* at 4–5). Over the course of the conspiracy, Lizarraga admitted being directly involved with the movement of more than 100 kilograms of methamphetamine and more than 17 kilograms of fentanyl. (*Id.* at 5).

He also brokered the sale of methamphetamine. (*Id.*). On one occasion, a DEA agent consummated a deal Lizarraga brokered and received approximately two pounds of methamphetamine from a juvenile female courier. (*Id.*). Furthermore, Lizarraga retrieved the drug proceeds and delivered them to Mexico-based traffickers. (*Id.*).

Lastly, Lizarraga knowingly and intentionally agreed to receive and hold an AR-15 semi-automatic assault rifle without a serial number and ammunition[2] until the Mexico-based trafficker planned to smuggle them into Mexico. (*Id.* at 5–6). After law enforcement surveillance discovered the items being transferred into Lizarraga's vehicle, he was stopped by law enforcement and a subsequent search revealed the AR-15 and ammunition. (*Id.* at 6).

Section 3553(a)(2)(A) focuses on the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Lizarraga's 96-month sentence continues to reflect the seriousness of his federal offenses and constitutes just punishment. Serving only 29 months of that sentence wouldn't significantly punish Lizarraga for his actions or deter this type of behavior in the future. For over a year, Lizarraga was heavily involved in coordinating the importation, distribution, and sale of methamphetamine and fentanyl in the United States, sometimes using minors to effectuate these sales.

Section 3553(a)(2)(B)–(C) underscores the need for sentences to encourage deterrence and protection of the public. Despite Lizarraga's emphasis on his rehabilitative efforts to downplay any prospect that he will reoffend or pose a danger to the public once he is released, he has only served 29 months of his 96-month sentence.

Drug trafficking is a serious crime which presents a danger to the public. *United States v. Cobarruvias-Pete*, No. 18-cr-4151-CAB, 2021 WL 4819301, at *2 (S.D. Cal. Oct. 15, 2021) (highlighting that the § 3553(a) factors don't warrant a release when defendant was sentenced to 120 months for importation of methamphetamine). Lizarraga facilitated the importation of more than 17 kilograms of fentanyl. Fentanyl is a serious drug that causes many deaths in the

---

[2] The ammunition included 60 rounds of .243 ammunition; 18 rounds of .223 ammunition; 50 rounds of 9mm ammunition; 2 rounds of .357 caliber ammunition; and 46 rounds of .38 caliber ammunition.

United States, and a heightened duty exists to deter importation of fentanyl into the community. Additionally, Lizarraga put the lives of minors in danger by using juvenile couriers to help distribute the drugs. Finally, law enforcement officers seized an AR-15 and ammunition that he was holding until it could be smuggled into Mexico. Not only did Lizarraga take part in actions that caused a danger to the public in the United States, but he also took part in actions that jeopardized those in Mexico.

Weighing all the factors against Lizarrago's admitted crimes, the Court finds the scales tip decidedly against reducing his sentence.

## II.     CONCLUSION

Lizarraga failed to demonstrate an "extraordinary and compelling reason," and the § 3553(a) factors continue to weigh heavily against warranting a reduction in sentence. His motion for reduced sentence is **DENIED**.

**IT IS SO ORDERED**.

Dated:  April 15, 2024

*Larry A. Burns*
**Hon. Larry Alan Burns**
United States District Judge